UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Hossein Aghamehdi

     v.                          Civil No.  17-cv-700-JD
                                    Opinion No. 2019 DNH 029

OSRAM Sylvania, Inc.

O R D E R

Hossein Aghamehdi brings suit against his former employer, OSRAM Sylvania, Inc., alleging violation of the New Hampshire Whistleblowers' Protection Act and wrongful discharge.  OSRAM moves to compel Aghamehdi to provide responses to several interrogatories and requests for production of documents. Aghamehdi objects to the motion.

Standard of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When a discovery dispute arises, a party may move to compel answers to interrogatories and requests for production of documents.[1]  Fed. R. Civ. P. 37(a)(3)(B).  The moving party bears

_____

[1] Under the Local Rules of this District, a party who moves to compel discovery responses "shall file only that portion of the discovery document that is objected to or is the subject of the motion."  LR 37.1(a).  OSRAM, nevertheless, filed copies of additional discovery requests and responses.  Although OSRAM did not comply with Local Rule 37.1(a), the mistake does not require the motion to be refiled.

the initial burden of showing that it seeks relevant information, and if satisfied, the opposing party then bears the burden of showing that the discovery request is improper. Rutledge v. Elliot Health Sys., 2018 DNH 042, 2018 WL 1187406, at *1 (D.N.H. Mar. 7, 2018).

## Background

In his complaint, Aghamehdi states that he is a registered professional engineer with a specialty in mechanical engineering. He began working at OSRAM in July of 2000 and was promoted several times thereafter. Beginning in September of 2015, Aghamehdi worked as a product manager in OSRAM's specialty lighting group.

As a product manager, Aghamehdi oversaw development and specifications for the horticultural lighting market. He reported to Christian Leclerc, general manager of the specialty lighting group. In February of 2016, Leclerc offered Aghamehdi the position of product manager for the horticultural lighting system. He accepted the offer and moved from Erie, Pennsylvania, to Exeter, New Hampshire.

In December of 2016, Aghamehdi worked with Steve Graves, who was an executive account manager, to submit a proposal to a company in Canada. The Canadian company did not accept the proposal because of the cost. Aghamehdi and Graves then worked

to reduce the costs from a third-party installer in an effort to have the proposal accepted.

Their work on the cost issue involved confidential pricing information that Graves forwarded to Leclerc and other OSRAM employees. The confidential information was disclosed to another installer that was an OSRAM subsidiary. When Aghamehdi learned that the confidential information had been disclosed to the subsidiary, he notified Graves that he might have violated laws pertaining to unfair competition and a restraint of trade. Aghamehdi also said that the sales team had violated antitrust laws. The sales team manager agreed that the disclosure potentially violated the law.

Aghamehdi then worked with Graves to assist a British Columbia customer with an OSRAM lighting system. Aghamehdi learned about certain operational adjustments for the lighting system from his own research and from a Danish customer. Aghamehdi gave Graves that information and promised to send a document about the adjustments. Aghamehdi composed the document from his research on websites and from what he had learned from the Danish customer and gave it to Graves.

A week later, Leclerc called Aghamehdi about the document, accusing him of plagiarism. Aghamehdi sent an email to clarify the sources for his document. Leclerc terminated Aghamehdi's

employment on March 2, 2017, citing plagiarism that was a serious violation of company policy.

Aghamehdi brings claims for violation of New Hampshire's Whistleblowers' Protection Act (RSA Chapter 275-E) and wrongful discharge. He contends that he is entitled to reinstatement; economic losses including wages, benefits, and lost earning capacity; compensatory damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life; enhanced compensatory damages; and reasonable attorneys' fees.

## Discussion

OSRAM seeks to compel discovery that it contends is relevant to its affirmative defenses of mitigation of damages and misconduct based on after-acquired evidence. OSRAM also contends that Aghamehdi has not provided a sufficient privilege log to support withholding documents on the basis of privilege. Aghamehdi objects.

## A. Discovery Related to Mitigation of Damages

Aghamehdi's claims both arise under New Hampshire law. As is noted above, he is seeking, among other things, economic losses including wages, benefits, and lost earning capacity. Under New Hampshire law, "[i]t is well established that a party seeking damages occasioned by the fault of another must take all

reasonable steps to lessen his or her resultant loss." Grenier v. Barclay Square Commercial Condo. Owners' Ass'n, 150 N.H. 111, 119 (2003).

Aghamehdi sought and obtained employment after he was terminated by OSRAM. OSRAM seeks information about Aghamehdi's current employment in Interrogatory No. 17 and Request for Production No. 20. Interrogatory 17 asked and was answered, as follows:

> 17. Identify all jobs that you have held from March 2, 2017 to the present, including the identity of the employer, the position title, the job duties, the dates the position was held, the weekly working hours of the position, the weekly rate of pay, and all other forms of compensation, including but not limited to bonuses, commissions, and the type and amount of all fringe benefits (e.g. health insurance, life insurance, pension, and profit sharing, etc.) and the reasons why any such employment came to an end.

> ANSWER: The plaintiff objects to this interrogatory to the extent it is overbroad, unduly burdensome, and seeks information disproportional to the needs of the case. Subject to and without waiver of these objections the plaintiff states as follows:

> I was unemployed and searching for work from the date of my termination until April 9, 2018, when I began a consulting position earning $112.00 per hour. On average I worked about 2 days a week in this position. Effective August 13, 2018, I became employed with the company that had hired me as a consultant as a Senior Manufacturing Engineer. In this new position, I am earning $80,000 annual salary, and my benefits include health insurance, a $50,000.00 life insurance policy, and profit sharing.

That answer was supplemented in a letter from Aghamehdi's counsel on November 2, 2018. Counsel continued to object on the grounds that the interrogatory was overbroad and that information about Aghamehdi's current employer and employment "has the potential to jeopardize the employee's current employment." Doc. 16-2, at *5. Counsel nevertheless provided additional information: "As of August 13, 2018, Mr. Aghamehdi became employed as a Senior Manufacturing Engineer. In this position he earns $80,000 a year. Please see the attached pay advice enclosed and BATES stamped P87." Counsel further represented: "The plaintiff stated he would produce personnel documents relevant to damages calculation, which is consistent with New Hampshire court orders speaking to current-employer document disclosure."

Request 20 asked and was answered as follows:

20. Produce all documents identified in your response to Interrogatory 17 or relied upon in responding to Interrogatory 17 regarding employment you have had since March 2, 2017, including but not limited to offer letters, employment contracts, and job position descriptions. We have supplied a blank Authorization for you to complete to respond to this request.

ANSWER: The plaintiff objects to this Request to the extent it is overbroad, unduly burdensome, and seeks information disproportional to the needs of the case. Subject to and without waiver of these objections, the plaintiff states he will forward personnel documents relevant to his damages calculation upon receipt of his personnel file from his current employer.

The authorization form provided for Request 20 states, with a notarized acknowledgement of execution at the end:

AUTHORIZATION TO OBTAIN EMPLOYMENT RECORDS

TO: _____
    (*Provide complete name and address of employer*)

    I, HOSSEIN AGHAMEHDI, hereby authorize you to release to McLane Middleton, Professional Association, c/o Jennifer L. Parent, 900 Elm Street, PO Box 326, Manchester, NH 03105-0326, all information and records regarding my employment with your company, including, but not limited to, records reflecting my compensation, benefits, attendance, and performance.

    *You may accept a photocopy of this authorization.*

_____
Hossein Aghamehdi

Aghamehdi has not provided the personnel documents that he promised in response to Request 20. The magistrate judge held a discovery status conference with the parties on November 7, 2018. OSRAM states in the motion to compel that during the conference OSRAM agreed to accept a certified copy of Aghamehdi's personnel file in lieu of serving a subpoena on the employer. Aghamehdi's counsel sent a letter dated December 3, 2018, which continued to object to providing information, including a certified personnel file, from his current employer. Counsel did provide a copy of the current employer's letter, dated June 12, 2018, offering employment to Aghamehdi, with identifying information redacted. Aghamehdi did not provide the

personnel file and continues to assert generally that the requests are overbroad, unduly burdensome, and are seeking inadmissible character evidence.

OSRAM contends that Aghamehdi's responses are incomplete because he has not provided "all responsive documents to these requests, including his current employer's name." Doc. 16, at *5. Aghamehdi argues that OSRAM is seeking, improperly, information about his work performance and character evidence.

Aghamehdi cannot dispute that his claim for damages puts his subsequent employment earnings and benefits at issue in this case, making that information relevant for discovery. See O'Garra v. Northwell Health, 2018 WL 502656, at *3 (E.D.N.Y. Jan. 22, 2018); Queen v. City of Bowling Green, 2017 WL 4355689, at *6 (W.D. Ky. Sept. 29, 2017); Zeller v. S. Cent. Emergency Med. Servs., Inc. 2014 WL 2094340, at *5 (M.D. Pa. May 20, 2014). In addition, a defendant employer need not rely on the plaintiff's own statements about his mitigation efforts. O'Garra, 2018 WL 502656, at *3. On the other hand, however, a request for information to support a failure to mitigate damages defense must be narrowly tailored to seek specific documents related to the defense. Id. at *4. For that reason, a request for the plaintiff's entire personnel file is overly broad. Zeller, 2014 WL 2094340, at *6.

In this case, OSRAM is entitled to discovery of information and documents related to the issue of mitigation of damages. Aghamehdi shall produce the specific information identified in Interrogatory 17, other than identification of his current employer. Aghamehdi shall also produce the documents "identified in your response to Interrogatory 17 or relied upon in responding to Interrogatory 17 regarding employment you have had since March 2, 2017, including but not limited to offer letters, employment contracts, and job position descriptions," as asked for in Request 20. Aghamehdi may redact identifying information about his current employer, and that part of Request 20 for the authorization form is denied.

## B. After-Acquired Evidence Defense

OSRAM argues that it is entitled to other information from Aghamehdi because it is relevant to its after-acquired evidence defense. To date, the New Hampshire Supreme Court has applied the after-acquired evidence defense only in breach of contract cases. McDill v. Environamics Corp., 144 N.H. 635, 640 (2000). The court held that "'after-acquired evidence of employee misconduct is a defense to a breach of contract action for wages and benefits lost as a result of discharge if the employer can demonstrate that it would have fired that employee had it known of the misconduct.'" ACAS Acquisitions (Precitech) Inc. v.

9

[Hobert](), 155 N.H. 381, 399 (2007) (quoting [McDill](), 144 N.H. at 641).  The court also explained that "we address only the propriety of applying the after-acquired evidence doctrine in cases that do not involve terminations that violate public policy, such as discrimination or retaliatory discharge." [McGill](), 144 N.H. at 640.

Despite that express limitation, the New Hampshire Supreme Court also noted that other jurisdictions have applied the after-acquired evidence doctrine in tort cases but "only to mitigate an employee's damages."  Id. at 641.  "The doctrine is used to limit the employee's damages to the time between the wrongful termination and the time the employer discovers the misconduct, provided the fact finder concludes that the employee's misconduct was sufficient to terminate the employee." Id. (citing [McKennon v. Nashville Banner Pub. Co.](), 513 U.S. 352, 362-63 (1995)).  The court concluded that "[w]e believe this approach is appropriate in tort cases because it properly balances the employee's entitlement to a remedy as a result of the employer's tortious conduct with an employer's interest in lawfully managing its business affairs."  Id.

In response to OSRAM's motion to compel, the court raised the possibility of certifying a question to the New Hampshire Supreme Court about the application of the defense under New

Hampshire law.  The parties agreed that certification was not necessary and that that the defense would apply as the New Hampshire Supreme Court stated in McDill.  Because the New Hampshire Supreme Court relied on McKennon in stating the standard that would apply in tort cases, this court will also rely on McKennon and cases that have applied that standard.

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." McKennon, 513 U.S. at 362-63.  When misconduct of that magnitude is proven, the employee is not entitled to reinstatement or front pay.  Id. at 362.  In awarding back pay, which is calculated from termination to discovery of the severe misconduct, "the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interest of either party."  Id. at 362.

In support of the after-acquired evidence defense, OSRAM propounded the following discovery to Aghamehdi:

Interrogatories

22.  Identify all social media accounts (e.g. Twitter, Facebook, Linked In) and email addresses that you have used since September 1, 2015, including the usernames for each social media account and the email addresses.

ANSWER:  The plaintiff objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, disproportional to the needs of the case, and seeks information that is not relevant to any issue in the case.

24.  Identify the person named "Wangli" and describe her relationship with you.

ANSWER:  The plaintiff objects to this interrogatory to the extent it asks the plaintiff to describe Wangli's relationship with the plaintiff because to such extent the interrogatory is overbroad, unduly burdensome, disproportional to the needs of the case, and seeks information that is not relevant to any issue in the litigation.  Subject to and without waiver of these objections, the plaintiff states as follows:

The last I knew, Wangli was a Sales Manager with Zhejiang Dotlighting Co., Ltd., 768# Anchang Road, Kequiao North Industrial Development Zone, Shaoxing City, Zhejiang Province, China.


## Requests for Production of Documents

7.  For the period of January 1, 2013 to the present, produce all electronic mail messages in your "h_aghamehdi@msn.com" account (sent to, received by, or copied on) relating to your work for OSRAM, your employment at OSRAM, your separation from employment at OSRAM, your alleged reports of violations of the law by representatives of OSRAM, this lawsuit, and the alleged damages you have suffered and seek to recover in this lawsuit.

ANSWER: The plaintiff objects to this Request on the grounds that it seeks documents protected by attorney-client privilege.

8. For the period of January 1, 2013 to the present, produce all electronic mail messages in your "ermaaa738@msn.com" account (sent to, received by, or copied on) relating to your work for OSRAM, your employment at OSRAM, your separation from employment at OSRAM, your alleged reports of violations of the law by representatives of OSRAM, this lawsuit, and the

alleged damages you have suffered and seek to recover
in this lawsuit.

ANSWER: The plaintiff objects to this Request on
the ground that it seeks documents protected by the
spousal privilege.

9. For the period of January 1, 2013 to the present,
produce all documents, electronic mail messages, or
other written communications between you and Alicia M.
Rainville-Aghamehdi regarding your work for OSRAM,
your employment at OSRAM, your separation from
employment at OSRAM, your alleged reports of
violations of the law by representatives of OSRAM,
this lawsuit, and the alleged damages you have
suffered and seek to recover in this lawsuit.

ANSWER: The plaintiff objects to this Request on
the ground that it seeks documents protected by the
spousal privilege.

10. For the period of January 1, 2013 to the present,
produce all documents, electronic mail messages, or
other written communications between you and the e-
mail account "65392076@qq.com" relating to your work
for OSRAM, your employment at OSRAM, your separation
from employment at OSRAM, your alleged reports of
violations of the law by representatives of OSRAM,
this lawsuit, and the alleged damages you have
suffered and seek to recover in this lawsuit.

ANSWER: See BATES stamped documents P69 – P70.

11. For the period of January 1, 2013 to the present,
produce all documents, electronic mail messages, or
other written communications between you and the e-
mail account "hn_wangli@hotmail.com" relating to your
work for OSRAM, your employment at OSRAM, your
separation from employment at OSRAM, your alleged
reports of violations of the law by representatives of
OSRAM, this lawsuit, and the alleged damages you have
suffered and seek to recover in this lawsuit.

ANSWER: The plaintiff does not have possession,
custody or control of any documents responsive to this
Request.

12. For the period of January 1, 2013 to the present,
produce all documents, electronic mail messages, or
other written communications between you and the e-

mail account "wangli@cn-naite.com" relating to your
work for OSRAM, your employment at OSRAM, your
separation from employment at OSRAM, your alleged
reports of violations of the law by representatives of
OSRAM, this lawsuit, and the alleged damages you have
suffered and seek to recover in this lawsuit.
      ANSWER: See BATES stamped P71 – P86.

28. Produce all documents that you took from OSRAM at
any time during your employment including, but not
limited to, documents relating to your employment and
documents relating to your retirement.
      ANSWER: Objection on grounds that the Request is
vague, overbroad and disproportionate to the needs of
the case.  Subject to and without waiving the
objection, the plaintiff did not "take" any documents
from OSRAM.  To the extent he was [sic] documents
related to his employment with OSRAM in his
possession, these were provided him in the course of
his employment.


1.  Standard

Aghamehdi argues in his objection to the motion to compel

that OSRAM has not made a sufficient preliminary showing that he

would have been discharged if he had engaged in the alleged

misconduct and, therefore, that OSRAM's discovery requests are

irrelevant to the defense.  In support, Aghamehdi relies

primarily on Miranda v. Deloitte, 962 F. Supp. 2d 379 (D.P.R.

2013).  He also argues that OSRAM is engaging in an

impermissible fishing expedition to examine his employment

records, his emails, and his social media accounts to find

information to support other grounds for asserting misconduct.

OSRAM contends, in response, that Aghamehdi is imposing the

standard for proving the defense which is not applicable to its discovery requests.

In Miranda, the defendant raised an after-acquired evidence defense based on its review of the plaintiff's tax returns and her deposition testimony and then asked to "announce" a tax expert to review the returns. Miranda v. Deloitte, 962 F. Supp. 2d 379, 387 (D.P.R. 2013). The court noted that the defendant did not have its own theory of the plaintiff's misconduct but instead hoped a tax expert would find misconduct to support the defense. Id. The court denied the defendant's motion to "announce" a tax expert because "the defendants have not named any alleged misconduct that occurred on the job, or any employment policy indicating that an employee's individual tax return preparation and submission are relevant to or somehow affect his or her job security." Id.

Although a defendant cannot be required to prove its defense in order to be entitled to discovery, the court must be mindful about the nature of the after-acquired evidence defense and the potential for abuse during discovery. An overly broad scope of discovery for this defense would allow employers to undertake fishing expeditions through an employee's private communications, financial records, personnel files, and other matters looking for evidence of misconduct. See, e.g., Barger

v. First Data Corp., 2018 WL 6591883, at *10 (N.D. Ala. Dec. 14, 2018) ("Federal courts are wary of allowing fishing-expedition discovery by employers to find evidence of wrongdoing.") (internal quotation marks omitted); Alston v. Prairie Farms Dairy, Inc., 2017 WL 4274858, at *2 (N.D. Miss. Sept. 26, 2017) ("Defendant cannot use the after-acquired evidence defense to conduct extensive discovery into the plaintiff's prior employment records on the basis of pure speculation.") (internal quotation marks omitted); Miranda, 922 F. Supp. 2d at 15-16. Such an intrusion and investigation into an employee's otherwise private matters could become a deterrent to meritorious civil rights, retaliation, and whistleblower claims. See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1070-72 (9th Cir. 2004).

For those reasons, the court has the responsibility imposed by the Supreme Court to take appropriate measures to prevent discovery abuses in the context of the after-acquired evidence defense. McKennon, 513 U.S. at 363. Therefore, an employer is not entitled to pursue discovery on an after-acquired evidence defense "in the absence of some basis for believing that after-acquired evidence of wrong-doing will be revealed." Walker v. H & M Henner & Mauritz, L.P., 2016 WL 4742334, at *1 (S.D.N.Y. Sept. 12, 2016). An employer must articulate both alleged misconduct by the employee and a basis in employment policy or

agreements for terminating the employee because of that conduct.
Miranda, 926 F. Supp. 2d at 387.

2.  Application

OSRAM asserts that Aghamehdi engaged in misconduct while
employed at OSRAM that would have resulted in his termination,
if it had been known.  Specifically, OSRAM states in its motion
(1) that Aghamehdi shared confidential and proprietary
information with his wife, (2) that he sent that information
from his OSRAM email account to his personal email account or to
others who were using social media, and (3) that he used this
information for some undisclosed personal reason.  OSRAM also
asserts that Aghamehdi had an inappropriate relationship with a
representative of an OSRAM vendor.

a.  Policies

OSRAM represents that it has "employee policies and a
handbook related to unauthorized use or disclosure of such
company-owned confidential and proprietary information."  Doc.
16 at 11.  OSRAM, however, did not provide copies of or quotes
from company policies or a handbook to show what was prohibited.
Nor does OSRAM provide a basis to believe that violation of
those policies or the handbook would lead to termination.

Therefore, discovery about actions that may have violated an unnamed policy or handbook is not relevant.

        b.   <u>Agreement</u>

OSRAM also represents that Aghamehdi signed "OSRAM SYLVANIA Companies Proprietary Rights Agreement" and quotes a part that pertains to protecting confidential and proprietary information.[2] OSRAM asserts that it believes Aghamehdi took confidential or proprietary information from OSRAM by using his OSRAM email account to send the information to his personnel email, shared that information with his wife and others by email and social media, and used the information for his own purposes. Aghamehdi argues that OSRAM has not shown enough to support discovery based on the agreement.

Because OSRAM presumably has access to Aghamehdi's OSRAM email account, it should have more than a belief about what those emails contain. See Walker, 2016 WL 4742334, at *1. Further, OSRAM does not cite a provision that Aghamehdi would have been terminated if he violated the agreement. These are matters within OSRAM's own knowledge and available information and do not require discovery to develop. Therefore, OSRAM has not provided enough to support discovery based on the agreement.

---

[2] Aghamehdi does not deny that he signed the agreement.

c.  Relationship

OSRAM asserts that it suspects that Aghamehdi "engaged in an inappropriate, undisclosed relationship with a representative of an OSRAM vendor."  Doc. 16 at 12.  OSRAM further asserts that "[s]uch an inappropriate relationship would have constituted grounds for disciplinary action against [Aghamehdi] during his employment."  Doc. 16 at 12-13.

OSRAM did not provide any factual support for its suspicion of a relationship.  In addition, while OSRAM states that an inappropriate relationship would have resulted in "disciplinary action," it did not cite or quote any company policy, procedure, or employment agreement to support that assertion.  Further, "disciplinary action" does not necessarily mean termination, which is the operative event to invoke the defense.  Therefore, OSRAM has not shown that discovery aimed at an "inappropriate relationship" is relevant to the defense.

d.  Disputed Discovery Requests

OSRAM seeks responses to Interrogatories 22 and 24 and to Requests 7-12, and 20 based on the after-acquired evidence defense.  Because OSRAM has not provided sufficient support for its asserted after-acquired evidence defense, those requests are denied.

In response to Request 28, Aghamehdi represented that he did not take any of the documents described but that he does have documents from OSRAM.  Aghamehdi shall produce copies of all OSRAM documents in his possession, regardless of how they may have come into his possession.

C.  Attorneys' Fees and Costs

In closing, OSRAM asks the court to "[a]ward OSRAM costs, including interest and attorneys' fees incurred in connection with this motion."  Doc. 16, at 14.  OSRAM provides no further discussion to support its request.  Given OSRAM's limited success on its motion to compel, an award of attorneys' fees and costs is not appropriate.  Fed. R. Civ. P. 37(a)(5)(A).

## Conclusion

For the foregoing reasons, OSRAM's motion to compel (document no. 16) is granted in part and denied in part.

Aghamehdi shall provide to OSRAM:

(1) information requested in Interrogatory 17 that has not already been provided, excluding the plaintiff's current employer's name;

(2)  the documents requested in Request 20 that correspond to the information provided in response to Interrogatory 17 with the current employer's name redacted; and

(3) the information requested in Request 28 as is provided in this order.

The motion to compel is otherwise denied.

Aghamehdi shall provide the responses, as required in this order, to OSRAM on or before **March 8, 2019.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 25, 2019

cc:  Nicholas F. Casolaro, Esq.
     Megan E. Douglass, Esq.
     Benjamin T. King, Esq.
     Jennifer L. Parent, Esq.